MARK WINDSOR (No. 190589)
16 N. Marengo Street, Suite 300
Pasadena, California 91101
Telephone (626) 792-6700
Facsimile (213) 232-3609
windsorlaw@gmail.com
Attorney for Defendant, Victor Gomez-Ortiz

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CV-10-2482-CAS |
| | CR-04-1239-CAS-4 |
| Plaintiff, | |
| v. | DEFENDANT GOMEZ ORTIZ'S REPLY TO OPPOSITION OF GOVERNMENT TO GOMEZ ORTIZ'S MOTION TO CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 |
| VICTOR GOMEZ ORTIZ | |
| Defendant. | |

　　　　PLEASE TAKE NOTICE that Defendant, VICTOR GOMEZ ORTIZ, by and through his counsel Mark Windsor, hereby replies to the opposition of the government to Mr. Gomez Ortiz's motion to correct sentence pursuant to 28 U.S.C. § 2255.  This reply is based on the arguments below and upon such other items that may be presented to this Court before the hearing and at the hearing on this matter.

//

//

1

## I. INTRODUCTION

On April 6, 2010, Mr. Gomez Ortiz filed a motion to correct his sentence, pursuant to 28 U.S.C. § 2255. Mr. Gomez Ortiz argued that the Court should have departed downward under U.S.S.G. § 5G1.3(b) for the period of time that he spent in custody for a related state conviction. On June 4, 2010, the government filed an opposition to Mr. Gomez Ortiz's motion based on both substantive and procedural challenges. For the following reasons, Mr. Gomez Ortiz's motion should be granted despite those challenges.

## II. THIS COURT HAS JURISDICTION TO REACH THE MERITS OF THE MOTION EVEN IF MR. GOMEZ ORTIZ DID NOT FILE THE MOTION WITHIN A YEAR AFTER THE DATE OF HIS FINAL JUDGMENT OF CONVICTION.

### A. A PLAIN READING OF 28 U.S.C. § 2255 REVEALS THAT MR. GOMEZ ORTIZ MUST CLAIM THE RIGHT TO BE RELEASED BEFORE HE MAY REQUEST THAT THE COURT CORRECT HIS SENTENCE.

The government first argues that this Court does not have the jurisdiction to review this motion since it was not filed within one year from the date on which the judgment of conviction became final, as required by 28 U.S.C. § 2255(f). Mr. Gomez Ortiz concedes that he did not file the motion within one year period but argues that § 2255 would not permit him to do so. Subsection (a) of § 2255 states:

> A prisoner in custody under sentence of a court established by Act of Congress *claiming the right to be released* upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a) (emphasis added). Several circuits, including the Ninth Circuit, have relied on the plain meaning rule to interpret § 2255(a). *See, e.g., United States v. Thiele*, 314 F.3d 399,

401-02 (9th Cir. 2003) (using a plain reading of the subsection to determine that it may not be used to challenge solely a restitution order); *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999); *Blaik v. United States*, 161 F.3d 1341, (11th Cir. 1998); *Smullen v. United States*, 94 F.3d 20, 25 (1st Cir. 1996) (holding that a plain reading of the statute did not permit a person no longer in custody to challenge the restitution that his sentence required him to pay). A plain reading of subsection § 2255(a) reveals the following: as a condition precedent to filing a § 2255 motion, a prisoner must be able to *claim the right to be released*.

On January 10, 2007, this Court sentenced Mr. Gomez-Ortiz to spend 70 months in prison. The judgment of conviction became final on January 24, 2007. *See* Fed. R. App. P. 4(b)(1)(a) (stating that a notice of appeal must be filed within 14 days of the entry of judgment); *United States v. Colvin*, 204 F.3d 1221, 1224 (9th Cir. 2000) (explaining that a judgment of conviction becomes final when the availability of appeal is exhausted). The government argues that Mr. Gomez Ortiz should have filed the § 2255 motion before January 24, 2008. However, at that point in time, Mr. Gomez Ortiz could not have claimed the right to be released based on a departure under §5G1.3(b). A departure under §5G1.3(b) would warrant his release on or after September 23, 2009. As a result, Mr. Gomez Ortiz would be able to request that this Court correct his sentence pursuant to § 2255 only on or after that date.

**B.   WHERE A PLAIN READING OF SUBSECTION (A) OF 28 U.S.C. § 2255 DIRECTLY CONFLICTS WITH SUBSECTION (F) IN THE SAME STATUTE, MR. GOMEZ ORTIZ REQUESTS THAT THE COURT RESOLVE THE AMBIGUITY BY INTERPRETING THE STATUTE IN HIS FAVOR PURSUANT TO THE RULE OF LENITY.**

Courts defer to the rule of lenity where legislative history and the traditional canons of statutory construction do not resolve an ambiguity in a statute. *Burgess v. United States*, 553 U.S. 124, 135-36 (2008); *Holloway v. United States*, 526 U.S. 1, 12 n.14 (1999) ("the rule of

lenity applies only if, after seizing everything from which aid can be derived, . . . we can make no more than a guess as to what Congress intended."). Where text, structure, and history fail to establish that the government's interpretation is unambiguously correct, courts resolve the ambiguity in the defendant's favor. *United States v. Granderson*, 511 U.S. 39, 54 (1994). To invoke the rule, the court must conclude that there is a grievous ambiguity or uncertainty in the statute, and not just a mere possibility of construing the statute more narrowly. *Dean v. United States*, 129 S. Ct. 1849, 1856 (2009); *see also United States v. Maciel-Alcala*, 598 F.3d 1239, 1248 (9th Cir. 2010). Our legal tradition has long held that "fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle v. United States*, 283 U.S. 25, 27 (1931). Even though courts have not ever considered whether the rule of lenity could apply to § 2255, the Supreme Court recently contemplated whether the rule could apply to a similar statute governing post-sentence administration. *See Barber v. Thomas*, 560 U.S. ___ (2010) (contemplating whether the rule of lenity could apply to 18 U.S.C. § 3624 which governs the rules for awarding precustody credit, though ultimately determining that the particular statute discussed was not sufficiently ambiguous for application of the rule).

  As the government points out, subsection (f) was added to § 2255 in 1996 after Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"). AEDPA, § 105, 110 Stat. 1214, 1220 (1996). Prior to AEDPA, a plain reading of § 2255(a) was consistent with the way the section functioned. Only after an individual was (1) in custody, (2) serving a sentence subject to collateral attack, and (3) claiming the right to be released, could the individual move the court to correct his sentence. *See, e.g.*, *Russell v. United States*, 306 F.3d 402, 405 (9th Cir. 1962) ("Thus, in a motion filed under that section [2255], the right to be released *at that time*

must be claimed.") (emphasis added); *Crow v. United States*, 186 F.3d 704, 706 (9th Cir. 1950) ("Relief under habeas corpus is limited to release from present detention.  It is not available to test the legality of threatened detention.  It does not lie to secure a judicial decision, which even if determined in the prisoner's favor, would not result in his *immediate release*.") (emphasis added).  Congress imposed a statute of limitation on § 2555 motions to curb abuse of habeas corpus proceedings and speed up the habeas process.  *See Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998) (discussing the legislative history of the one year statute of limitation of section 2254, section 2255's sister rule applied to state sentences, which was also imposed by AEDPA); *see also Calderon v. U.S. Dist. Ct.*, 128 F.3d 1283, 1288-89 (9th Cir. 1997) (overruled on other grounds).  However, one of the more general purposes of a statute of limitations is to clearly define the time period when a suit must be commenced.  *United States v. Colvin*, 204 F.3d 1221, 1226 (9th Cir. 2000).  Where Congress imposed a one year statute of limitation, yet failed to excise the condition that the individual must claim the right to be released before he may file a motion, Congress clearly failed to achieve that purpose.

      The grievous ambiguity in the statute results in multiple interpretations of section 2255. The government contends that Mr. Gomez Ortiz should have filed the motion within one year of the date on which the judgment of his conviction became final, irrespective of whether or not he could claim the right to be released at that point in time.  This interpretation all but ignores an explicit condition precedent of § 2255.  Yet, another, more literal, interpretation of the statute would permit an individual in custody to file a motion only if he or she (1) filed within statute of limitations and (2) could claim the right to be released within that one year period.  This interpretation would exclude most, if not all, individuals who are serving sentences longer than a year from filing motions.  Still, another interpretation would permit an individual to file a motion

5

within one year of meeting all conditions precedent of § 2255(a). While not entirely consistent with the literal language of § 2255, this interpretation would resolve the ambiguity of the statute in Mr. Gomez Ortiz's favor.

Where the legislative history of section 2255 and the canons of construction provide no insight on how to resolve this ambiguity, the rule of lenity requires courts to adopt the latter interpretation. *See United States v. Granderson*, 511 U.S. 39, 54 (1994). Under the latter interpretation, this Court would still have jurisdiction to review Mr. Gomez Ortiz's motion. Mr. Gomez Ortiz argues that he was entitled to a downward departure in his sentence pursuant to U.S.S.G. §5G1.3(b). If this Court had departed downward pursuant to that section, Mr. Gomez Ortiz would have had the right to be released on September 23, 2009. Mr. Gomez Ortiz filed this motion pursuant to § 2255 on April 6, 2010, which is well within the one year statute of limitations period. Since Congress failed to unambiguously state that individuals no longer need to claim the right to be released before filing a § 2255 motion, this Court still has jurisdiction to review Mr. Gomez Ortiz's motion.

### C. EVEN IF THE COURT IS UNWILLING TO RESOLVE THE CONFLICT BETWEEN SUBSECTION (A) AND SUBSECTION (F), EQUITABLE TOLLING STILL PERMITS THE COURT TO CORRECT MR. GOMEZ ORTIZ'S SENTENCE.

Where a motion pursuant to 28 U.S.C. § 2255 is untimely, the court may still toll the one-year limitation if (1) the petitioner has diligently pursued his or her rights and (2) extraordinary circumstances exist. *United States v. Aguirre-Ganceda*, 592 F.3d 1043, 1045 (9th Cir. 2010) (citing *Pace v. Diguelielmo*, 544 U.S. 408, 416 (2005)). The petitioner must show that extraordinary circumstances[1] beyond his or her control made it impossible to file a petition on

---

[1] Several of the cases cited in this section referring to "extraordinary circumstances" actually discuss this rule as applied to the one-year statute of limitations of 28 U.S.C. § 2254, which is

time, and the extraordinary circumstances were the cause of his or her untimeliness. *United States v. Battles*, 362 F.3d 1195, 1196-97 (9th Cir. 2004). The extraordinary circumstances must not be attributable to the petitioner. *Byers v. United States*, 561 F.3d 832, 836 (8th Cir. 2009); *United States v. Hernandez*, 436 F.3d 851, 858 (8th Cir. 2006) ("Equitable tolling only applies when the circumstances that cause the delay in filing are 'external to the plaintiff and not attributable to his actions.'" (citation omitted)). Ignorance of the filing deadline or counsel error in calculating the limitations period is not enough. *United States v. Perry*, 530 F.3d 361, 365-66 (5th Cir. 2008).

Extraordinary circumstances may exist where the petitioner is materially misled into missing the deadline. *Barreto-Barreto v. United States*, 551 F.3d 95, 101 (9th Cir. 2008); *see, e.g., Riddle v. Kemna*, 523 F.3d 850, 858 (8th Cir. 2008) ("[petitioner] may receive the benefit of equitable tolling if he can establish that a court's conduct 'lulled the movant into inaction through reliance on that conduct.'" (citation omitted)); *Perry*, 530 F.3d at 367 (holding that extraordinary circumstances existed where a party is misled by an affirmative, but incorrect, representation of a court on which the petitioner relies to his detriment). Furthermore, equitable tolling may be appropriate where an adversary's conduct prevents a petitioner from timely filing. *Lott*, 304 F.3d at 924-25 (9th Cir. 2002) (holding that extraordinary circumstances existed where petitioner was denied access to his files for 28 days during two transfers); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (holding that extraordinary circumstances existed where prison officials failed to prepare a check for the filing fee and mail the motion as instructed by petitioner); *United States v. Gabaldon*, 522 F.3d 1121, 1124-25 (10th Cir. 2008) (holding that petitioner had presented extraordinary circumstances where prison officials had confiscated all of

---

similar to §2255, but applies to state sentences. The Ninth Circuit held that both have the same

the petitioner's legal documents six weeks before the expiration of the limitations period and refused to return them when petitioner requested). Courts must make a close and careful examination of the details as part of a highly fact-dependent determination of whether an extraordinary circumstance exists. *Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002).

Where Mr. Gomez Ortiz diligently pursued his rights pursuant to § 2255 and was prevented from exercising those rights due to extraordinary circumstances, the one year period of limitation may be tolled. *Cf. United States v. Aguirre-Ganceda*, 592 F.3d 1043, 1045 (9th Cir. 2010). Between 2005 and 2007, Mr. Gomez Ortiz was transferred between state and federal custody four different times. This court sentenced Mr. Gomez Ortiz on January 10, 2007. Fourteen days after his federal conviction, Mr. Gomez Ortiz was returned to state custody to continue to serve his state sentence. Authorities transferred Mr. Gomez Ortiz back to federal custody on September 27, 2007. He first became aware of the problems with his federal sentence on December 11, 2007 upon his return to federal custody. Mr. Gomez Ortiz filed a grievance form with the Bureau of Prisons, explaining that there was a problem with his sentence and requesting a meeting with the Bureau. Attachment A. On February 7, 2008, nearly two months after he made the request and clearly beyond the one year statute of limitations for a § 2255 motion, the Bureau of Prisons responded with a written explanation of the credits that had been awarded to Mr. Gomez Ortiz's sentence. Attachment B. The Bureau's response provided no resolution to Mr. Gomez Ortiz's problem. He again followed up with another grievance on May 25, 2008 to the records supervisor at the federal prison, requesting that his state and federal be imposed concurrently. Attachment C. The supervisor attempted to resolve the problem informally at a later unknown date.

---

operative language and purpose. *United States v. Battles*, 362 F.3d 1195, 1196 (9th Cir. 2004).

The Bureau of Prisons' response materially misled Mr. Gomez Ortiz into missing the deadline. The Bureau of Prisons led Mr. Gomez Ortiz to believe that he needed to challenge the manner in which the Bureau calculated his sentence rather than how the court imposed that sentence. The Bureau was in a position to know that Mr. Gomez would need a response to his request for information at least one year before his sentence had become final. Mr. Gomez Ortiz needed that information to adequately determine whether or not he should proceed to file a § 2255 motion. The Bureau's failure to timely reply to Mr. Gomez Ortiz's request foreclosed the possibility that he could timely file a motion pursuant to § 2255. This failure was only exacerbated by the initial eight months that Mr. Gomez Ortiz spent in state custody during that one year tolling period. These extraordinary circumstances created by the Bureau's decision to place Mr. Gomez Ortiz in state custody during his initial eight months of confinement and then its failure to timely respond to his grievance requests led Mr. Gomez Ortiz to believe that either (1) he should not file a § 2255 motion because he needed to challenge the Bureau's execution of his sentence, or (2) he was ineligible to file § 2255 motion because the Bureau's response came well after the one year period of limitations. In light of these extraordinary circumstances, the court may toll the one-year statute of limitations and still review Mr. Gomez-Ortiz's motion.

    **D.    THE COURT MAY ALSO STILL CORRECT MR. GOMEZ ORTIZ'S SENTENCE BASED ON STATUTORY TOLLING.**

The statute of limitation period may start running from: "the date on which an impediment to making the motion created by governmental action in violation of the Constitution or laws of the United States is removed, if movant was prevented from making a motion by governmental action." 28 U.S.C. § 2255(f)(2). It is not clear from the Bureau of Prisons' Program Statements if, and to what extent, Mr. Gomez Ortiz was entitled to an administrative hearing to confirm or challenge his sentence. The Bureau's failure to fully

address his grievance may have violated Mr. Gomez Ortiz's procedural due process rights.

### III. MR. GOMEZ ORTIZ'S MOTION SHOULD NOT BE TREATED AS A MOTION PURSUANT TO 28 U.S.C. § 2244 BECAUSE MR. GOMEZ ORTIZ DOES NOT CHALLENGE THE BUREAU OF PRISONS' CALCULATION OF HIS SENTENCE.

In its remaining arguments, the government proceeds to treat Mr. Gomez Ortiz's motion as a habeas petition filed pursuant to 28 U.S.C. § 2241. The opposition states that the motion "does not challenge the defendant's actual sentence, but rather how the sentence is being executed." The government proceeds to argue the following: (1) the § 2241 petition was filed in the wrong district, (2) this Court may not intervene in the process of determining the credit for prior custody, (3) the Bureau of Prisons awarded the correct amount of prior custody credits pursuant to 18 U.S.C. § 3585(b), and (4) the Bureau of Prisons' calculation is consistent with this Court's instructions at the sentencing hearing. Furthermore, the government argues that, separate and apart from § 2255 and § 2241, the court lacks jurisdiction to modify its judgment to reduce the sentence that it imposed. The government has mischaracterized Mr. Gomez Ortiz's motion as a habeas petition pursuant to § 2241. He does not challenge the manner in which the Bureau of Prisons has executed his sentence, but rather how the Court imposed that sentence.

Mr. Gomez Ortiz concedes that this Court does not have jurisdiction to intervene in the process of awarding pre-custody credit. *See United States v. Wilson*, 503 U.S. 329, 334-35 (1992); *United States v. Peters*, 470 F.3d 907, 909 (9th Cir. 2006). In fact, his request for a downward departure is based upon the point that the Bureau did correctly award prior custody credits. *United States v. Dorsey*, 166 F.3d 558, 564 (3d Cir. 1999) (" . . . there is no conflict between §5G1.3 n.2 and section 3585(b) because a district court only awards credit when the BOP will not do so."). The Guidelines state the that the court "shall adjust the sentence for any

period of imprisonment already served on an undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." U.S.S.G. §5G1.3(b)(1). When determining whether § 5G1.3(b) may apply to a sentence, the sentencing court gives full consideration of whether the Bureau will credit the federal sentence for the period of imprisonment served towards the undischarged term. *Dorsey*, 166 F.3d at 564 ("Under section 5G1.3(b), the district court does not award a *Willis* credit (because this is time that will be awarded by the BOP) but does award credit for the remainder of the presentence federal time (because the BOP cannot award this under section 3585(b)."); *United States v. Drake*, 49 F.3d 1438, 1440 (9th Cir. 1995) ("Application of section 5G1.3(b) is a matter for the court, not the Bureau, to decide."); *United States v. Kiefer*, 20 F.3d 874, 875-76 (8th Cir. 1994) ("But in this appeal Kiefer seeks to invoke a Guidelines provision to reduce his federal sentence. That is a question for the sentencing court, and we find nothing in *Wilson* suggesting that the Attorney General's authority under §3585(b) limits a sentencing court's power to apply § 5G1.3 of the Guidelines."). This process requires that the court calculate the precustody credits that the Bureau will award to the federal sentence to determine if the Bureau will not credit any of the time already served on the undischarged term. *See Dorsey*, 166 F.3d at 564 (explaining that §5G1.3(b) requires that the district court apply the Bureau of Prisons' program statements to predict the amount of precustody credit that the Bureau will award). While the Bureau did correctly award *Willis* credit for some of the time that Mr. Gomez Ortiz spent in custody before his federal sentence, the Court did not take into account any time that Bureau would not award to determine whether his sentence warranted a departure pursuant to §5G1.3(b). *See, e.g., United States v. Bell*, 28 F.3d 615, 618-19 (7th Cir. 1994).

      Since Mr. Gomez Ortiz does not challenge the manner in which the Bureau of Prisons has

executed his sentence, the government's characterization of the motion as a habeas petition pursuant to §2241 is incorrect. The Court has the authority pursuant to 28 U.S.C. § 2255 to correct Mr. Gomez Ortiz's sentence by departing downward under §5G1.3(b) for pre-custody time not awarded by the Bureau of Prisons. Even though the Bureau correctly awarded *Willis* credit, the Bureau did not award Mr. Gomez Ortiz credit for 604 days that he spent in presentence confinement. The Bureau did not award him credit for these days because its Program Statements do not permit it to do so. During the sentencing phase, the Court should have estimated the number of precustody days that the Bureau would credit Mr. Gomez Ortiz's sentence for time that he served towards his undischarged state sentence and determined that he would not receive credit for a significant number of days. The Court should have taken this information into account when deciding whether Mr. Gomez Ortiz merited a downward departure pursuant to §5G1.3(b).

## IV. CONCLUSION

The Court should grant Mr. Gomez Ortiz's motion and correct his sentence by departing downward pursuant to §5G1.3(b). After a downward departure, Mr. Gomez Ortiz will be eligible for release on September 23, 2009. After the Court corrects his sentence, Mr. Gomez Ortiz requests that the Court release him from custody.

Respectfully submitted,

DATED: JUNE 24, 2010

_____/s/_____
MARK WINDSOR
Counsel for Victor Gomez Ortiz